923 F.2d 856
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Thomas v. CASSIDY, Plaintiff-Appellant,
v.
Owen D. CASSIDY and Douglas J. Cassidy, Defendants-Appellees.
 No. 90-1200.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 13, 1990.
Decided Jan. 23, 1991.
Rehearing Denied Feb. 27, 1991.
 
 Before CUMMINGS, COFFEY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Thomas Cassidy ("plaintiff") appeals from the district court's decision to dismiss with prejudice his suit against Owen and Douglas Cassidy ("defendants"). We affirm.
 
 I.
 
 2
 In June, 1988, plaintiff sued the defendants, his brothers, for payment for legal services that plaintiff allegedly performed for the defendants during the mid-1970's and early-1980's. After some procedural maneuvering by the parties, the district court set the case for trial on November 2, 1989.
 
 
 3
 Before filing his original complaint in June 1988, plaintiff sent a letter to his brothers, Owen and Douglas. The letter informed the defendants that plaintiff would be suing defendants unless they paid the attorney's fees they allegedly owed. The letter also warned the defendants to
 
 
 4
 leave the members of [the Cassidy] family out of these claims and litigation, plus one or more of them might be witnesses and your contact with any of them about these cases could later be regarded as a tampering with or interference with their respective testimony.
 
 
 5
 Unfortunately, plaintiff did not heed his own advice. The case was proceeding on course to trial when on October 17, 1989, plaintiff sent a letter to Jack Pearl. Pearl was the plaintiff's brother-in-law, married to plaintiff's sister Colleen. In a postscript to the letter, plaintiff wrote that his attorneys had told him the defendants "intend to call your wife, Colleen, Susie Walsh [another sister of the parties] and Mike Bartley as their witnesses." The plaintiff went on to write that if Colleen Pearl and Susie Welch testified, "many things are going to come out that I have done for them as an attorney and brother that you might find embarrassing and which to this day you do not know about."
 
 
 6
 The defendants learned about the letter to Jack Pearl and apparently (and quite reasonably) construed it as an attempt to influence him to dissuade Colleen Pearl and Susie Walsh from testifying. On October 27, 1989 the defendants filed an emergency motion for sanctions against plaintiff. At a hearing held October 31, 1989, the district judge denied defendants' motion but admonished the plaintiff not to write any letters to his sisters.
 
 
 7
 The court's admonishment came too late. On October 28 (one day after the defendants' motion), plaintiff had written a letter to Susie Walsh. The letter was hand-delivered to Walsh's mailbox sometime between October 29 and November 1; Walsh found the letter, with her regular mail, on November 1. The best word to characterize the letter to Walsh is "bizarre." Besides being bizarre, the letter was also threatening. In the letter, plaintiff recounted a number of embarrassing incidents from Walsh's and her family's past (for example, her husband's alcoholism and an automobile accident her husband was involved in while drunk) that he threatened to expose during cross-examination at trial if Walsh testified.
 
 
 8
 Upon learning of the letter, the defendants filed another emergency motion for sanctions. During a pretrial conference on November 2 (the day trial was to begin), the district court reviewed the letter to Walsh, heard argument from counsel, and decided to dismiss plaintiff's case with prejudice. The judge reasoned that most, if not all, the incidents plaintiff raised in the Walsh letter were not proper subjects for cross-examination, and that as a lawyer who had practiced for over thirty years the plaintiff should have known that cross-examination about these incidents would not be proper. The judge viewed the letter as an attempt to intimidate Walsh (and, to a lesser extent, Colleen Pearl), and decided that the only appropriate sanction for the plaintiff's conduct was to dismiss his case with prejudice. Plaintiff filed a timely motion to reconsider, which the judge denied.
 
 II.
 
 9
 Cassidy does not dispute that district courts possess inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962). This authority includes the harsh sanction of dismissal of a case when necessary to serve "the interests of justice." See Schilling v. Walworth County Park & Planning Com'n, 805 F.2d 272, 275 (7th Cir.1986). Since the district court is in the best position to determine what action is necessary to remedy malfeasance in actions before it, we review the district court's decision to impose sanctions--including the decision to dismiss a case--only to determine whether the district court abused its discretion. The question is not whether we would have dismissed the case if the decision had initially been ours to make; it is whether the district court acted reasonably in doing so. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1976) (dismissal under Fed.R.Civ. p. 37 for failure to provide discovery). We will find that the district court abused its discretion only if "it is clear that no reasonable person could concur in the trial court's" decision. Pyramid Energy, Ltd. v. Patterson, Inc., 869 F.2d 1058, 1061 (7th Cir.1989) (citations omitted).
 
 
 10
 Plaintiff argues that the district court abused its discretion by dismissing his case because the Walsh letter was an isolated incident; no record of delay or other contumacious conduct exists in this case. Plaintiff also asserts that the district court should have considered less severe sanctions. We disagree. It is true that we have noted that dismissal with prejudice is a harsh sanction that generally is appropriate only "when there is a clear record of delay, or when other less drastic sanctions have proven unavailing." Schilling, 805 F.2d at 275 (quoting Webber v. Eye Corp., 721 F.2d 1067, 1069 (7th Cir.1983). But this case does not involve failure to be present at a pretrial conference or failure to be ready for trial on short notice, the type of behavior involved in the cases plaintiff cites, and the type of behavior we have held would not support dismissal as a sanction standing alone. Rather, the behavior here--the letter to Jack Pearl, and particularly the letter to Walsh--cut at the heart of the court's most important function, the truth-finding process. As the district judge explained, plaintiff "poisoned the whole process" by threatening to improperly expose embarrassing incidents about a witness if she testified.
 
 
 11
 The trial judge could reasonably conclude that testifying under the cloud created by plaintiff's letter could lead Walsh to shade her testimony and that going on with the trial in those circumstances would be unfair (or appear to be unfair) to the defendants. Plaintiff suggests that lesser sanctions could have eliminated any danger to the defendants; for example, plaintiff suggests that the district court could have barred cross-examining Walsh about any improper subjects, or could even have barred cross-examining Walsh completely. However, it would not be unreasonable for the judge to conclude that neither of these solutions would dispel the fears of a lay witness who is unversed in the law's procedural and evidentiary niceties.
 
 
 12
 Moreover, even accepting plaintiff's contention that he sent the Walsh letter before the district judge told him not to send any such letters (a contention the judge accepted), plaintiff's action was clearly improper, and the judge could reasonably conclude that plaintiff knew it was improper. Plaintiff's letter to Pearl clearly shows plaintiff knew Walsh was a potential witness. Most, if not all, of the subjects discussed in the letter appear to be improper subjects for cross-examination; plaintiff makes no serious attempt to argue otherwise. Plaintiff has been an attorney for over 30 years, with experience in both state and federal courts, so it is reasonable to conclude that he must have known he could not properly cross-examine Walsh concerning many of the incidents raised in the letter. Why send the letter, then, except to attempt to influence Walsh's testimony? Plaintiff's pre-lawsuit letter to defendants, in which he warned the defendants about contacting Walsh or Colleen Pearl, demonstrates that he knew such an attempt to tamper with a witness was improper. Given the impropriety of plaintiff's action, the damage such actions do to the court's truth-finding function and the appearance of fairness, and the need to deter such action in the future (whether by plaintiff or others), it was not an abuse of discretion for the district court to conclude that dismissal was an appropriate sanction in this case. And, given plaintiff's knowledge that his action was clearly improper, it was not an abuse of discretion not to warn plaintiff before dismissing his case.
 
 
 13
 It is true, as plaintiff notes, that this court has stated a preference for resolving cases on the merits after trial. See, e.g., Schilling, 805 F.2d at 275. Plaintiff vigorously insists that his claim is meritorious, and that a jury might reasonably find that he is entitled to damages from the defendants. That may be so; but plaintiff's own intervening actions prevent him from presenting his case to a jury.[1]
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 In addition to the arguments discussed in the text, plaintiff also argued in his reply brief that the district court's decision to dismiss his case violated his right to due process, and that dismissal was improper because defendants had engaged in misconduct similar to his early in the litigation. While both of these arguments appear to be meritless, we need not definitely decide because by failing to raise these arguments in his opening brief, plaintiff has waived them. See Reynolds v. East Dyer Development Co., 882 F.2d 1249, 1253 n. 2 (7th Cir.1989)